(Clark County, Ohio, Probate Court.)

FREDERICK RAPP v. THE OHIO SOUTHERN R. R.

---

In order to maintain the action provided for in section 6448, R. S., the plaintiff must be the owner of the legal title.

When a person owning lands conveys the legal title to another, under an agreement with such person to reconvey to him, and on failure or refusal of such person to reconvey, the original owner agrees to accept a certain amount for his interest, such original owner has no right, either, legal or equitable, to such land; and cannot maintain the action provided for in section 6448, R. S.

---

ROCKEL, J.

The plaintiff has filed the following petition.

In Probate Court, Clark county, Ohio.

Frederick Rapp, plaintiff, v. The Ohio Southern Railroad Co., defendants.

The defendant is a railroad corporation duly organized under the laws of Ohio, and authorized to appropriate personal property.

Plaintiff says that on the first day of December, 1877, he was the owner in fee simple of the premises hereinafter described, that being engaged in the business of selling intoxicant liquor, and not wishing to hold real estate in his own name, he entered into an agreement with his wife, Christiana Rapp, by which he was to convey said premises to her, through a trustee, to be held by her in trust to be reconveyed to him on his request.

Plaintiff says that in pursuance of such agreement, he and his said wife, on the first day of December, 1877, conveyed said premises to one Thomas J. Thompson in trust to be conveyed to plaintiff's said wife; that afterwards, on the 5th day of December, 1877, said Thompson conveyed said premises to plaintiff's said wife, and that both of said deeds, while

[COPYRIGHT, 1898, BY CARL G. JAHN.]

VOL. V.—*37

they cite a consideration of "one dollar and other valuable consideratons", were in fact without consideration.

Plaintiff says that on the 15th day of August, 1890, he and his said wife Christiana Rapp, conveyed said premises to their son-in-law, Seward Hayes, under a verbal agreement with said Hayes to pay plaintiff's said wife $1900.00, 'and upon the further agreement with said Hayes that the undivided one-half of said premises should belong to plaintiff, and that said Hayes should mortgage said premises for $2600.00 dollars, for the purpose of paying said $1900.00 dollars to plaintiff's said wife, Christiana Rapp, and a mortgage ther upon said premises, amounting with interest and the cost of making said deed and obtaining said mortgage loan. to about $700.00 dollars; that said Hayes after making said mortgage, was to convey the undivided one-half of said premises to plaintiff, and upon the payment of said mortgage of $2600.00 dollars by him and his saving plaintiff from the payment of any part of said $2600.00 dollars and any interest thereon, the remaining undivided one-half of said premises should belong to said Hayes.

Plaintiff says that in pursuance of said agreement he and his said wife conveyed said premises to said Hayes, and that said Hayes and wife in pursuance of said agreement duly executed and delivered to one William Foos a mortgage on said premises to secure the payment of said Hayes' note made to said Foos for the sum of $2600.00 dollars, dated August 15th, 1890, and bearing interest from date at the rate of eight per cent., which mortgage was on the 15th day of August, 1890, filed for record in the recorder's office of Clark county, Ohio, and said Hayes on said date out of the money obtained by said mortgage, paid to plaintiff's said wife, Christiana Rapp, the said sum of $1900 dollars, and the balance for the release of said prior mortgage, costs etc.

Plaintiff says that frequently thereafter he requested said Hayes to convey to him the legal title to the undivided one-half of said premises, but that said Hayes refused so to do and thereafter, on the 17th day of February, 1891, written agreement was entered into by plaintiff with said Hayes and wife, which is hereto attached marked "Exhibit A" and made a part hereof; that said contract was left at the office of the recorder of Clark county, Ohio, for record on the 17th day of February, 1891. at 11:20 o'clock A. M., and was recorded in vol. 10, page 578, deed records of said Clark county, Ohio.

Plaintiff further says that he is the owner of the undivided one-half of the premises above referred to, which are described as follows: situate in the city of Springfield, Clark county, Ohio, and bounded as follows: viz:

Beginning at the northwest corner of lot number one of Demint's plat of Springfield; thence along the east line of Limestone street N. 1 degree E, 63.85 feet; thence still along the east line of Limestone street, N. 5 degrees 30 minutes, E. 22.40 feet to a cross in a stone, thence S. 85 degrees 09 minutes. E. 76.90 feet to a stone; thence S. 34 degrees 53 minutes, E. 58.25 feet to a cross in a stone; thence S. 13 degrees 08 minutes, 74.80 feet to a stake; thence N. 51 degrees 30 minutes, W. 54.80 to a stake in the north line of said lot number one of Demint's plat of Springfield; thence along the north line of said lot number one N. 89 degrees 15 minutes, W. 84.44 feet to the place of beginning.

Plaintiff says that the defendant with notice of plaintiff's ownership, has taken possession of and is occupying said land and has removed valuable buildings, quarried and removed valuable building rock therefrom, and the said premises have not been appropriated or paid for by said corporation, the defendant, nor is the same held by any agreement in writing with plaintiff, and said defendant has no right, legal or equitable, thereto.

Plaintiff says that on the 23rd day of October, 1893, he caused a notice to be served on defendant, in writing, notifying it to proceed, under the statute, to appropriate said lands, as required by law, a copy of said notice, showing manner of service is hereto attached and marked "Exhibit B." and made part hereof; that more than 10 days have elapsed since the service of said notice, and said defendant has failed to proceed, as required thereby.

Plaintiff prays that such steps may be taken, as are authorized by law, to appropriate plaintiff's interest in said land to the use of said corporation, the defendant, and to compensate plaintiff therefor.

Amos Wolfe & Summers & Beard plaintiff's attorneys.

State of Ohio, Clark County, ss.

Frederick Rapp, plaintiff, being first duly sworn, says that he believes the statements of the foregoing petition to be true.

　　　　　　　　　　Frederick Rapp.

Sworn to before me and subscribed in my presence this 3rd day of November, 1893.

(Seal.)　　F. M. Hagan, Notary Public.

Copy of Agreement, "Exhibit A."

Articles of agreement entered into on this 17th day of February, A. D. 1891, by and between Frederick Rapp, party of the first part, and Seward Hayes and Caroline Hayes, his wife, party of the second part, witnesseth; that whereas said party of the first part is the owner of the undivided one half interest in the real estate situate on North Limestone street in the city of Springfield, Clark county, Ohio, and being the property upon which said party of the first part now resides, and

being described as follows: viz-: being lot upon which are located the following numbers, 122, 124 and 126, including buildings and lot, and whereas the said Seward Hayes now holds a deed for the whole of said real estate, and whereas said Hayes is about to remove from the city of Springfield with his family, it is agreed by said parties hereto as follows; that said party of the first part is to reside with said party of the second part until said property can be sold, and out of the proceeds after the mortgage is paid, now on said property amounting to twenty-six hundred dollars, in favor of William Foos, said party of the first part is to receive fifteen hundred dollars out of the purchase money, and said party of the second part agrees to board and support said party of the first part free of charge, up to the time that said property is sold, as aforesaid, and said fifteen hundred dollars is paid to said party of the first part, and said property is to be placed in the hands of some competent real estate agent to be sold at once, and must be sold for a sum sufficient to pay said mortgage and to pay said party of the first part fifteen hundred dollars in cash.

In testimony whereof said parties have hereunto set their hands this 17th day of February, A. D. 1891.

　　　　　　　　　　Frederick Rapp,
　　　　　　　　　　Seward Hayes,
　　　　　　　　　　Caroline Hayes.

Executed in presence of
Edward P. Torbert,
Amos Wolfe.

To this petition a general demurrer has been filed. One of the grounds upon which it is claimed the demurrer should be sustained is, that the allegations of the petition show the plaintiff to be the owner of only an equitable interest, if he has any at all, in the land which it is sought to compel an appropriation. In other words, it is claimed that the person seeking to compel a corporation to condemn under section 6448, must be the owner of the legal title.

This is a question upon which I find no reported decision.

In the present case, it seems to me, it will not be seriously contended that Rapp had more than an equitable title to the undivided one-half of the premises in the petition described.

The petition shows, that for different reasons, he made two conveyances of the legal title to the property. First in December, 1877, he conveyed to a trustee, to be conveyed to his wife. And again in 1890, he joined with his wife in a conveyance to Hayes. I know that Rapp claims that there was a trust connected with each one of these conveyances, but until the trust was executed and a reconveyance made to him, he was the owner of but an equity, the legal title remaining where he had put it, in Seward

Hayes. It is an impossibility for two persons at the same time to have the legal title to the same interest in real estate.

If one has the legal title, the greatest title another can have is an equitable title. That is, to possess rights sufficient to go into a court of equity, and compel the owner of he legal title to transfer such legal title to him. Trusts are the commonest, I might say almost exclusive source of equitable titles. This action is brought under section 6448, R. S. This section as applicable to the case at bar, is as follows:

"When a corporation, authorized by law to make appropriation of private property of the land named in 6439 of this chapter, has taken possession of, and is occupying or using the land of any person * * * and the land so occupied or used has not been appropriated and paid for by the corporation, or is not held by any agreement in writing with the owner thereof * * * such owner or owners thereof, or either of them * * may serve notice in writing, upon the corporation in the manner provided for the service of summons against a corporation, to proceed under this chapter to appropriate the lands, and on a failure of such corporation for ten days so to proceed, said owner or owners * * * may file a petition in the probate court of the proper county setting forth the fact of such use or occupation by the corporation, and that the corporation has no right, legal or equitable, thereto * * *."

The word "owner or owners" as used in this section, if unlimited, might possibly include the owner of an equitable as well as a legal title. But when it is said that the petition must allege that the corporation has no right, legal or equitable, to such lands, it is certainly questionable whether the legislature did not mean that the petitioner must be the legal owner.

This allegation was not required by the original act of April 16, 1865, 62 v. 85. But was added by the act of April 23, 1872, 69 v. 95.

The act of 1865 provided merely that the owner might file a petition, not specifying what it should contain, and therefore when it was provided that the petitioner must allege that the corporation must not hold the property by any right, legal or equitable, and there being in the usual sense of the term but two ways of holding title to property, to-wit: legal and equitable, the necessary conclusion follows: that it was intended, that the plaintiff must be the holder of the legal title before the action can be maintained. For if the plaintiff has but an equitable title, out of possession, the defendant, by the mere fact of possession, might be held to hold the land by a superior right to that of the plaintiff.

And therefore, if the petition aleges that the defendant has no right, legal or equitable thereto, and also shows that the defendant is in possession, and the plaintiff is but the holder of an equitable title, such allegation is contradictory, and cannot be accepted as true.

Besides it might properly be assumed that if the plaintiff had only an equitable title and the corporation was in possession, that it was in possession under a legal tiitle.

In Re Wm. J. George, 5 C. C., 212, it is said "It is only when the railroad company has no legal or equitable estate to the premises that the proceedings are authorized, hence it follows that if the railroad company has a legal or equitable estate in the premises, the owner of the premises can not resort to this section for relief, and the question of title cannot be a question for the jury".

It was further held in this case that, the fact that the corporation has no right, legal or equitable in the premises, is a jurisdictional fact, and must be found to exist before the judge has authority to order a jury, id. p. 214-215. In the quite recent case of Kramer v. The I. & O. C. R. R., 53 Ohio. 436, this dictum is at least modified, and it is held that they are issuable acts to be determined in the trial of the case.

This is a proceeding unknown to the common law, and purely one of statutory creation, yet from what the supreme court has said, on several occasions, I am led to believe that they look upon it as somewhat akin to the o'd action of ejectment in determining, when the right of action may exist. In the case of Railroad Company v. Perkins, 49 Oho St., 330 et seq. it is said: "One of two things would seem to be true: either the statutory remedy against the company is a substitute for the right to recover the possession, or it is cumulative, and in each case the measure of compensation is the same. The more rational construction is, that it was intended to be cumulative, as affording the owner a speedier and more efficient remedy than an action of ejectment. * * *

"It is a mistake to say that by the wrongful entry of the company the right of the owner is turned into a mere chose in action for the value of it, and his only remedy is a proceeding under the statute to compel its appropriation. * * *

"The language imports a legislative understanding that the land remains the property of the owner until it has been condemned and paid for as therein provided."

In Railroad Co. v. Robbins, 35 Ohio St., 531, it was held that an action could not be maintained by the owner for the value of his land, on the ground that there is no action for the conversion of land: that the remedy in such case, is either to compel an appropriation by a proceeding under the statute, or to recover the land itself, as in other cases of unlawful entry.

It seems to me therefore, in the light of these decisions, proper to hold that it was the intention of the legislature to confer upon the person who held the title, the common law right to begin an action of ejectment, or by the code provision for a real action, the additional right to compel an appropriation under this section (6448).

In the action of ejectment it was necessary for the plaintiff to hold the legal title. Wallace v. Seymore, 7 Ohio, Pt. 1, p. 156.

Section 5781, R. S., which is the substitute intended by the code for the action of ejectment, provides:

"In an action for the recovery of real property, it shall be sufficient if the plaintiff state in his petition that he has a legal estate therein, etc."

I am of the opinion therefore that in order to maintain the action provided by sec. 6448, R. S., the plaintiff must have the legal title to the land which he is endeavoring to compel a corporation in possession to appropriate.

Since the above was written, I have received the 53 Ohio St., and on page 444, in the case of Kramer v. The T. & O. R. R., J. Shauck uses the following language:

"Although the land of which the company took possession is a public highway, its occupation for the purpose alleged in the petition, imposed upon it an additional servitude for which the plaintiff, as owner of the fee, is entitled to compensation; and his right in that regard, the company having taken possession without appropriation and without the owner's consent, may be enforced under the provisions of section 6448, Revised Statutes.

It will be noticed here, that he calls attention to the fact that the plaintiff, "as owner of the fee", has a right to maintain the action.

Thus far this case has been considered upon the assumption that the plaintiff had at least an equitable title to the land described in the petition, or some kind of an interest therein.

But is this true? Do the facts alleged in the petition show that the plaintiff is the owner of these lands in any sense of the term, or that he has any kind of an interest or ownership therein?

Has he any thing more than a right to a certain amount of the proceeds arising from the sale of the land?

If he has no interest or ownership in the lands, there can be no question but that the plaintiff can not maintain this kind of an action.

According to the petition, what are the facts? Plaintiff was the owner of the lands described in the petition. By an agreement these lands were conveyed by him through a trustee to his wife to be re-conveyed to him at sometime not designated in the petition. Thereafter, for some cause not set forth, he and his wife conveyed these premises to their son-in-law Seward Hayes, Hayes agreeing to pay certain debts and thereafter re-convey an undivided ½ interest to the plaintiff.

Hayes and the plaintiff seemed to have some controversy about carrying out this part of the agreement, the plaintiff frequently insisting upon the performance of this part of the contract and a re-conveyance to him of his interest therein, and for some reason Hayes refusing to reconvey to plaintiff what he demanded. In order to settle this controversy, they made the agreement attached to the petition as "Exhibit A".

By this contract plaintiff acknowledges that Hayes holds legal title to all, and agrees to accept for his interest therein, the sum of $1500.00 when the property is sold, and his maintenance until such time as it is sold. While there is an allegation in this agreement that the plaintiff is the owner of the ½ interest in the premises, there is no agreement on the part of Hayes in the settlement of this controversy, that he will convey to plaintiff the interest he claims. But Hayes does agree in settlement of this claim of the plaintiffs, to an ownership of ½ of the premises, to place the property in the hands of a real estate agent, and when the premises are sold to give him $1500.00 of the proceeds, and also to keep him until the premises are sold.

This contract was not only an acknowledgment that Hayes held the legal title, but in consideration of an agreement to pay him $1500.00 out of the proceeds of the sale of the land and his maintenance until such sale occurs, a relinquishment to Hayes of all claims the plaintiff had to the title of such property.

The petition does not show whether or not Hayes made a sale of these premises, or that there ever was a rescission of this contract. It seems to me, therefore, that the plaintiff has no interest in he land that can bring him within the usual acceptation of the meaning or use of the term "owner of land".

All that he can possibly claim from any source whatever, is the sum of $1500.00, and whatever damage he may have sustained by failure of Hayes to maintain him until the premises are sold; but that in no case can he recover the land itself.

The demurrer therefore, will be sustained.

Amos Wolf, George Beard, for plaintiff.

Oscar T. Martin, for defendant.